**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Joseph LARSON, a/k/a Chuck
Larson, Defendant-Appellant.**

**No. 74–3997.**

United States Court of Appeals,
Fifth Circuit.

Jan. 22, 1976.

Robert J. Head, Jr., Orange Park, Fla. (Court-appointed), for Larson.

John L. Briggs, U.S. Atty., John J. Daley, Jr., Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before BELL and DYER, Circuit Judges, and MEHRTENS, District Judge.

PER CURIAM:

This is an appeal by one defendant, Charles Joseph Larson, from a conviction on one count of conspiracy to print and distribute counterfeit money in violation of 18 U.S.C.A. §§ 471, 472 and 473. Larson was tried together with James Anthony Koblein, another defendant co-conspirator, in a jury trial in which both were convicted. Four other defendant co-conspirators pleaded guilty before trial and testified for the government. Larson asserts three grounds for reversal of his conviction: insufficiency of the evidence, plain error in the admission of certain testimony, and plain error in the failure to sever his trial from that of Koblein. We find no error and therefore affirm, but we summarize the facts of the case to assist in understanding appellant's arguments.

The counterfeit money scheme originated in June, 1973, with two of the other co-conspirators, Louie Best, a bank vice president in Jacksonville, Florida, and William Poarch, a printer who was having financial difficulties. Poarch suggested to Best that counterfeit money could be distributed using Best's bank as an outlet. Best declined, however, and he contacted a third person, Jerry Friesland, who arranged to give some of the counterfeit money printed by Poarch to Joseph Scales, a stockbroker. Scales, who had been involved with Koblein in a stock fraud conspiracy during 1972,[1] discussed with Koblein the possible distribution of the money in New York. In August, 1973, the first batch of $60,000 to $70,000 was given to Scales, who took the money to his apartment. There, he, Larson, and Koblein sorted it, using rubber gloves and a dishtowel to avoid making any fingerprints. He then gave Koblein $7,000 to $9,000 of the counterfeit money.

In September, Friesland delivered $50,000 in counterfeit money to his ex-wife, Susan Friesland, who was a named co-conspirator but not a defendant. She requested another million dollars and in late September the second batch of $1,200,000 was printed by Poarch, including $320,000 in $20 denominations. Mrs. Friesland was unable to raise the purchase price, however, and did not receive any more money at that time.

In late September, Friesland planned to go to Las Vegas with Larson and Koblein to find an outlet for the counterfeit money, a scheme discussed previously by Larson, Koblein and Scales. Upon being told by Scales that Koblein and Larson would be given a small number of the counterfeit twenties to "test-pass," Friesland decided not to go. On the day that Larson and Koblein were to leave for Las Vegas, Scales put six of the twenties and some of the fifties and one hundreds in one of his business envelopes and delivered it to Larson, tearing his return address off the envelope to avoid detection.

---

1. The stock fraud conspiracy is discussed in detail in *United States v. Larson*, 5 Cir., 1975, 526 F.2d 256 [No. 74–3996, decided this day]. Koblein and Larson were defendants in that case, together with a number of other persons, some of whom are also defendants in this case. Koblein and Larson were also in a third case, involving various charges arising from perjured testimony given at a trial in which Koblein was a defendant. *United States v. Larson*, 5 Cir., 1975, 526 F.2d 262 [No. 74–3998, decided this day].

When Larson and Koblein returned to Jacksonville on October 4, early in the morning, they were arrested by an FBI agent on a warrant stemming from an indictment in the stock fraud case. Upon arriving at the Jacksonville FBI office, the white business envelope with counterfeit money inside of it was found in Koblein's possession. An FBI expert was subsequently able to raise a portion of the return address impressed on the rear inside wall of the envelope. Moreover, Larson's fingerprint was also found on the envelope.

On October 7, Friesland and Scales did deliver an additional $1,000,000 in counterfeit money to Susan Friesland in Tampa. In 1974, Scales, Friesland, Poarch, and Best continued to consider printing more counterfeit money, even though Poarch declined, until their arrests in May and June. Koblein had been already been tried and convicted in January, 1974 for the unlawful possession of the counterfeit money found in the envelope on his person upon his arrest at the airport. His conviction was summarily affirmed in *United States v. Koblein*, 5 Cir., 1974, 498 F.2d 911.

Larson's first contention is that there was insufficient evidence to support his conviction. Given his continual association with Koblein, his actual possession at Scales' apartment of the $60,-000 to $70,000 in the initial counterfeit batch, and his actual possession of the Koblein envelope with his fingerprint on it, his contention that there was insufficient evidence to support his conviction clearly lacks merit. *See United States v. Parr*, 5 Cir., 1975, 516 F.2d 458, 463–64.

Larson next argues that certain testimony was prejudicial "bad character" evidence as in *United States v. Larson*, 5 Cir., 1975, 526 F.2d 256 (No. 74–3996, n. 1, *supra*). The facts brought forth on direct testimony regarding Koblein's ostensible Mafia connections, gambling by Larson and Koblein, and the fast and easy life style of Koblein and Larson were, in the view of the government, relevant to the background of the conspiracy and to the motive for the conspiracy, i. e., the need for money. Moreover, evidence relating to the time period prior to the conspiracy also goes to the relationship of Koblein with the other co-conspirators. Evidence brought forth on the redirect was in response to cross-examination regarding inconsistencies in prior statements engendered by fear of the witnesses or with respect to plea bargaining by Best. The admission of such evidence was not prejudicial, in view of the points and authorities discussed in *United States v. Larson, supra.*

Larson's final contention is that the trial judge erroneously failed to sever his case from that of Koblein, although the cases were properly joined under Rule 8, F.R.Crim.P. This is similarly controlled by the discussion of points and authorities in *United States v. Larson, supra.*

Affirmed.