**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Joseph LARSON, a/k/a Chuck Larson, Defendant-Appellant.**

**No. 74–3998.**

United States Court of Appeals,
Fifth Circuit.

Jan. 22, 1976.

Rehearing Denied Feb. 23, 1976.

Robert J. Head, Jr., Orange Park, Fla. (Court-appointed), for Larson.

John L. Briggs, U. S. Atty., John J. Daley, Jr., Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before BELL and DYER, Circuit Judges, and MEHRTENS, District Judge.

BELL, Circuit Judge:

This is an appeal by one defendant, Charles Joseph Larson, from a conviction on one count of conspiracy to commit perjury, in violation of 18 U.S.C.A. § 1623, and a conviction on one count of the substantive offense of giving false testimony, in violation of 18 U.S.C.A. § 1623. Larson was convicted in a jury trial, together with a fellow defendant and co-conspirator, James Anthony Koblein.[1] Koblein was convicted on the conspiracy count and on three other substantive counts of giving false testimony, perjuring himself and influencing Susan Copeland, a witness in a previous criminal trial in which he was a defendant. Copeland, who was named a co-conspirator but not a defendant, testified at the trial below for the government. Larson asserts that certain testimony was erroneously admitted and that the trial judge should have severed his case from that of Koblein. We find both points without merit and therefore affirm.

The criminal trial around which the efforts at perjury were directed was a prosecution against Koblein for possession of counterfeit money, stemming from his arrest at the Jacksonville airport after returning from an abortive attempt to distribute the counterfeit money in Las Vegas. See United States v. Larson, 5 Cir., 1975, 526 F.2d 260 [No. 74–3997, n. 1, supra] for the background of his possession of that money.

The details of Koblein's arrest at the airport are pertinent to the perjured testimony. Koblein and Larson arrived at the Jacksonville airport on October 4, 1973, shortly after 2 a. m., where they were placed under observation by two FBI agents who had warrants for their arrest based on a stock fraud indictment. See United States v. Larson, 5 Cir., 1975, 526 F.2d 256 [No. 74–3996, n. 1, supra]. After being met by Larson's girlfriend, Donna Brothers, they went to the baggage receiving area, where Koblein appeared to be nervous and watchful. At one point, Koblein left the baggage area and went over to see Susan Copeland, a car rental agency representative with whom Koblein was acquaint-

---

1. Koblein and Larson were defendants in three cases decided today by this court. In United States v. Larson, 5 Cir., 1975, 526 F.2d 256 [No. 74–3996, decided this day], they were convicted of charges arising from a stock fraud conspiracy. In United States v. Larson, 5 Cir., 1975, 526 F.2d 260 [No. 74–3997, decided this day], they were convicted of charges arising from a conspiracy to counterfeit federal reserve notes. Larson's appeals of his convictions in both cases were affirmed by this court.

ed. After receiving their baggage, Koblein and Larson were about to depart when they were arrested. Donna Brothers at that point left hurriedly and Koblein and Larson were then transported to the local FBI office. During the trip from the airport to the office, Koblein told the agent that he was a "con man" and "hustler" who made a "buck where I can" and that he did not have a job.

At the FBI office, the envelope with counterfeit money was discovered on Koblein's person. One of the agents indicated that the bills appeared to be counterfeit but would have to be checked out. Koblein made the statement "if there was something wrong with that money, they would have a real problem out in Las Vegas and there would be a lot of it out there."

Koblein's trial for possession of counterfeit money on October 3 was scheduled for January 28, 1974. On January 20, Koblein asked Copeland to come to his apartment. When she arrived with her roommate, Koblein questioned Copeland as to what she had been asked by the FBI agent on the night of his arrest. At that point Koblein took Copeland into the bathroom where he took her by the arm and pushed her up against the wall. He then shut the door and turned on the shower to avoid any electronic bugs, and told Copeland that "I am going to want you to lie for me when I go to trial . . . we will get back to you. I just need you to lie for me." Copeland did not immediately acquiesce but Koblein indicated that he would get in touch with her again.

On January 23 Koblein asked Copeland to meet him at his attorney's office. When she arrived at the office the attorney indicated that Koblein had said that Copeland had given Koblein an envelope at the airport. At this point Koblein said, "tell him [the attorney] about the man with the white hair that gave you the envelope just before our flight came." Copeland responded, "the man with the white hair gave me an envelope just before the flight came in." Copeland then indicated that she did not know what the contents of the envelope were, but the attorney indicated that Copeland would be a defense witness. On January 25, Koblein gave Copeland additional description of the man with the envelope and indicated to her that if she were questioned by either the FBI or the Secret Service, that she should "stick with that story."

On January 27, Koblein and Larson met at the apartment of Joseph Scales, who had originally given Koblein the counterfeit money in the envelope. When Scales told Koblein that he had been subpoenaed for the trial, Koblein told Scales not to worry about it because Koblein had already "cooked up" a story for the trial.

Two other events are pertinent to the appeal. After Copeland's January 23rd meeting with Koblein, Copeland was driven home by Koblein. When Copeland raised the armrest to put her pocketbook down, she discovered a pistol in there, which Koblein indicated was his gun and which he kept with him at all times. At the January 27th meeting between Koblein and Scales, they got into an argument, during the course of which Koblein got his gun out and said "I ought to blow your damn head off."

At the January 28th trial, after the Government case was presented Koblein testified that Copeland had given him the envelope with the counterfeit money, which he gave to Larson to be given to a Mr. Mackoul, Sr., but which Larson subsequently gave back to him. Larson testified that Koblein told him that the envelope had been left at Copeland's counter and substantiated the Mackoul story. Copeland testified that a man, who asked if she knew Jimmy Buttons (Koblein's alias), had given her the envelope, which she gave to Koblein.

In rebuttal, the government offered testimony of Brothers that she had not seen any envelope when Koblein returned from the car rental counter, although it was possible that Koblein could have given Larson the envelope. The two FBI agents who made the arrest had previously testified that they had

never seen any envelope pass. The jury ultimately convicted Koblein. The conviction was summarily affirmed, *United States v. Koblein*, 5 Cir., 1974, 498 F.2d 911.

Subsequent to the trial, Koblein told Copeland that she had been a good defense witness and also indicated that a friend named Sam from New York might offer to set Copeland up in a dress shop or something of her own. When the Grand Jury began to investigate the apparently perjured defense in April, Copeland first testified as she had at the trial in January. Subsequently, she told the entire story to federal agents, admitting that she had perjured herself at the January trial and the April Grand Jury. She indicated that the reason she had so testified was fear of Koblein.

Brothers had similarly denied any attempt by Koblein to suborn her based on her fear. When Scales entered into a plea bargain with the government, he volunteered information about the source of counterfeit money in the envelope, as well as information about a jail conversation in which Larson told Scales that Larson had committed perjury at the trial.

■ Although the appeal of Koblein is not before us, much of the testimony alleged by Larson to be prejudicial relates to Koblein's affectation of a Mafia image. Larson asserts that this testimony was hearsay and was also inadmissible as evidence of bad character not probative of any issue in the case. The difficulty that Larson faces is that the evidence was probative of the states of mind of the witnesses whose perjury was suborned or whose silence was maintained, issues that were relevant to the guilt or innocence of Koblein as to the substantive offenses, and of both as to the concealment of the conspiracy.

Much of the testimony regarding Koblein's Mafia associations, his possession of weapons, and threats made to other persons, was relevant to the state of mind of the witness whose perjury was suborned. This is not only the fear of the witness Copeland that caused her to allow herself to be suborned into perjury at the January trial, but also the fear that caused the delay of the witnesses Copeland, Brothers, and Scales in revealing the perjury, or their knowledge of the perjury, to the government until after the April Grand Jury hearing. *Cf. United States v. Bowdach*, 5 Cir., 1974, 501 F.2d 220, 226 (extortion case); *United States v. Tropiano*, 2 Cir., 1969, 418 F.2d 1069, 1081 (Hobbs Act). A certain amount of the testimony of this nature alleged to be prejudicial was also brought forth by cross-examination of the witnesses by Koblein and Larson.

Moreover, within the limits of the conspiracy, the testimony is not hearsay, in that statements testified to by Copeland were those of Larson and Koblein. See *United States v. Williamson*, 5 Cir., 1971, 450 F.2d 585, 590 n. 8. Additionally, the acts of Koblein in instilling fear in Copeland's mind may be regarded as being in furtherance of the conspiracy, by concealing it from detection.

■ In Larson's motion for a new trial, he raised for the first time the allegation that he was "substantially prejudiced and deprived of a fair trial by reason of the consolidation of the above captioned cases for the purposes of trial," referring to the two indictments one of which was only against Koblein. The two indictments were properly joined, in that the subject of the perjured testimony of Copeland and the testimony of which Koblein attempted to have Brothers perjure herself involved the same incident at the airport, as well as the same trial. There is no basis for error, in view of the points and authority discussed in *United States v. Larson*, 5 Cir., 1975, 526 F.2d 256 [No. 74–3996, n. 1, *supra*].

Affirmed.